**FILED**
**FEBRUARY 21, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 1092**

| | | |
|---|---|---|
| U.S. DATA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| | ) | **JUDGE MANNING** |
| | ) | **MAGISTRATE JUDGE VALDEZ** |
| REALSOURCE, INC. and PRIORITY DIRECT, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff, U.S. DATA CORPORATION ("U.S. Data"), for its Complaint for Injunctive and other Relief against Defendants, REALSOURCE, INC. ("RealSource"), and PRIORITY DIRECT, LLC ("Priority Direct"), state and allege as follows:

**Introduction**

1.      This action arises from Defendants' breaches of a Non-Disclosure/Non-Circumvent Agreement, as well as their tortious interference with Plaintiff's prospective economic advantage. RealSource is a company engaged in the business of customer database marketing analysis related to direct marketing campaigns. RealSource entered into a Pre-Screen List Agreement with U.S. Data, whereby RealSource agreed to provide ongoing information to U.S. Data, including Credit Scored Prescreening Lists and other direct marketing services, for the term of the Agreement. U.S. Data is in the business, among other things, of buying and selling tailored customer database lists for direct mail, telemarketing and e-mail marketing to specific types of business (*i.e.,* timeshare resellers). Priority Direct, LLC is a company engaged in the business of preparing and distributing direct mail marketing materials for customers of

U.S. Data, among others. Approximately two years after entering into the Agreement, during which the parties had an ongoing business relationship pursuant to the Agreement, RealSource, breached covenants by which they agreed: a) to provide confidential information relating to evaluation of mutual business opportunities; b) to maintain the confidentiality of the information disclosed; and c) not to divulge U.S. Data's named sources or to circumvent the relationship U.S. Data had with its named sources, principals, clients, agents, brokers, associates and subscribers and/or end users. To prevent further irreparable harm arising from this course of wrongdoing, Plaintiff seeks, among other things, injunctive relief: (a) enjoining RealSource and Priority Direct (and anyone acting in conjunction with them) from soliciting any U.S. Data customers or doing business with any U.S. Data client; and b) mandating the immediate return and barring any further use of any customer databases that is still in possession of Defendants.

**Parties**

2. U.S. Data Corporation is a Nevada corporation with its principal place of business at Embassy Tower, 9300 Underwood Avenue, Suite 270, Omaha, NE 68114. U.S. Data engages in the business, among other things, of buying and selling customer database lists for direct mail, telemarketing and e-mail marketing to businesses on a national and international basis.

3. RealSource, Inc. is an Illinois corporation whose principal place of business is 8N980 Dittman Road, Elgin, Illinois. RealSource supplies credit scored customer contact lists and other marketing analysis and demographic information.

4. Priority Direct is a North Carolina limited liability company with a registered office address of 112 Bennevis Court, Asheville, NC 28803. Priority Direct compiles and distributes direct mailings.

5. This Complaint seeks equitable relief and monetary damages related to breaches of the NDA. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1), in that the Plaintiff is incorporated in Nevada and does business in the State of Nebraska, RealSource is incorporated in and does business in the State of Illinois, Priority Direct is incorporated in and does business in North Carolina, and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1301 and 28 U.S.C. § 1391, as one of the Defendants resides in and does business in this district and several of the acts complained of occurred in this district.

**Facts Giving Rise to the Complaint**

6. On or about August 25, 2005, U.S. Data and RealSource entered into the Pre-Screen List Agreement ("August 2005 Agreement") and the Non-Disclosure/Non-Circumvent Agreement ("August 2005 NDA"), whereby RealSource agreed to supply U.S. Data with timeshare data. A copy of the August 2005 NDA is attached hereto as Exhibit A.

7. On or about May 17, 2007, Phil Tincher at RealSource emailed U.S. Data and requested that it execute another Pre-Screen List Agreement ("May 2007 Agreement") and Non-Disclosure/Non-Circumvent Agreement ("May 2007 NDA"). Paragraph 10(c) of the May 2007 NDA indicates that any disputes arising out of or related to the May 2007 NDA were to be governed by Illinois law, with a venue provision dictating that all disputes be heard in Cook County, Illinois courts. Copies of the May 2007 Agreement and May 2007 NDA are attached hereto as Exhibits B and C, respectively.

8. Jeff Herdzina, president of U.S. Data, executed the May 2007 NDA and sent it back to RealSource. To the best of U.S. Data's knowledge, RealSource never returned a fully executed copy of the May 2007 NDA to U.S. Data.

9. RealSource and U.S. Data entered into both NDA's with the mutual objective of providing protection for information while maintaining the ability to conduct each party's respective business activities. *See* Exhibits A and C. In Paragraph 2 of both NDA's, the parties agree to avoid disclosure, publication or dissemination of information provided by the other party, and to use information provided solely for the purpose of this agreement. *See* Exhibits A and C. Paragraph 2 goes on to indicate that information may only be disclosed to a party's employees, and employees of parent and subsidiary companies who have a need to know, and that disclosure to any other party requires the written consent of the party disclosing information. *See* Exhibits A and C.

10. Further, Paragraph 9 of both NDA's read as follows:

NON-CIRCUMVENTION. By signing this Agreement, the parties hereby mutually and irrevocably agree not to divulge each other's named sources and not to circumvent, either directly or indirectly, the relationships that each party has with their named sources, principals, clients, agents, brokers, associates, and subscribers and/or end users.

See Exhibits A and C.

11. Paragraph 3 of both NDA's indicates that, "Disclosed Information continues to be subject to this Agreement for two years following the disclosure date, regardless of the termination date of this Agreement." *See* Exhibits A and C.

12. During the period August 2005 through May 2007, U.S. Data placed orders for timeshare data through RealSource in accordance with the Agreement and August 2005 NDA, U.S. Data in turn sold said timeshare data to Timeshare Relief, one of U.S. Data's customers.

13. In or around June 2007, Timeshare Relief continued to place orders with U.S. Data, however, it became apparent due to order volume that Timeshare Relief was seeking data from other vendors. On information and belief, Timeshare Relief began ordering directly from RealSource in or around June 2007.

4

14. On information and belief, during this time period, Mark Welch, managing member of Priority Direct, and Trent Martin, president of RealSource, entered into an agreement whereby Priority Direct would market its services to customers of U.S. Data, the identity of which would be supplied by RealSource, which had access to such data due to its contractual relationship with U.S. Data.

15. In or around August 2007, U.S. Data requested that Mark Welch of Priority Direct sign a Non-Disclosure/Non-Circumvent Agreement relating to services it provided to U.S. Data customers. Welch ignored this request.

16. On or about September 7, 2007, RealSource sent U.S. Data Corporation a Notice of Termination. A copy of the September 7, 2007 correspondence is attached hereto as Exhibit D.

17. In or around November 2007, Timeshare Relief ceased ordering data from U.S. Data.

18. In or around December 2007, Mark Welch informed Jeff Petermann, the account representative for Timeshare Relief, that he was using RealSource's data for a project for Timeshare Relief.

19. In Paragraph 9 of both NDA's, each party agreed to "not contact the clients of the other party for any reason without written consent of the other party." See Exhibits A and C.

20. Through its actions, RealSource violated the non-circumvention clause contained within the NDA. Specifically, on information and belief, RealSource and Priority Direct encouraged customers of U.S. Data, including Timeshare Relief, to cease their relationship with U.S. Data and deal directly with RealSource.

21. Through its actions, RealSource also violated the confidentiality clause contained within both NDA's when it provided customer information to Priority Direct without U.S. Data's express written consent.

22. Paragraph 2 of both NDA's indicates that, "[a]ny unauthorized disclosure shall constitute a potential material breach of duty to the source party and could result in the source party seeking recourse against the other party." See Exhibits A and C.

23. Despite written demands that RealSource cease contacting customers of U.S. Data in violation of the NDA, RealSource has refused to cease contacting U.S. Data customers. *See* September 17, 2007 correspondence from Daniel Pape, counsel for U.S. Data, attached hereto as Exhibit E.

## COUNT I
### (Breach of Contract Against Real Source)

24. Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1-23 of this Complaint as though fully set forth herein.

25. By virtue of the foregoing, RealSource has breached its contractual obligations with U.S. Data.

26. Plaintiff has performed all of its duties under both of the NDA's, and throughout the course of its dealings with RealSource, adhered to all of the terms therein.

27. Paragraph 9 of both NDA's reads, "[s]hould circumvention occur, in addition to other legal remedies, compensation equal to that paid and/or scheduled to be paid to the breaching party from the transaction(s) related to the breach committed is due and payable to the non-breaching party by the breaching party. *See* Exhibits A and C.

28. Plaintiff has demanded that RealSource and Martin cease soliciting U.S. Data customers in violation of both NDA's, to no avail.

6

29. Plaintiff has been damaged, and will continue to be damaged, in an amount in excess of $300,000 as a direct and proximate result of RealSource's breaches of both NDA's.

30. On information and belief, the Defendants have circumvented both NDA's by soliciting business from other U.S. Data customers and will continue to do so unless enjoined by this Court.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor and against Defendant, RealSource, Inc., and provide it with the following relief:

   A. An accounting of all revenues earned through RealSource's deception and disgorgement of same;

   B. Judgment in an amount in excess of $500,000, plus interest;

   C. Attorney's fees and costs incurred herein; and

   D. Any and all relief this Court deems just and appropriate.

## COUNT II
### (Tortious Interference With Prospective Economic Advantage Against All Defendants)

31. Plaintiff incorporates and alleges Paragraphs 1-30 of this Complaint as though fully set forth herein.

32. U.S. Data had a reasonable expectation that RealSource, as a party to both NDA's, would adhere to the terms of both NDA's and refrain from soliciting U.S. Data's customers directly.

33. Further, U.S. Data had a reasonable expectation that Priority Direct, as a direct mail marketer for some of U.S. Data's customers, including Timeshare Relief, would refrain from soliciting U.S. Data's customers directly. .

34. RealSource, as a party to both NDA's, was aware of U.S. Data's expectation that Real Source would adhere to the terms of both NDA's. Further, Real Source knew, by virtue of

both NDA's and its prior relationship with U.S. Data that U.S. Data had an expectation of prospective economic advantage with its customers.

35. Priority Direct, as a result of its business dealings with U.S. Data and its customers, was aware of both NDA's entered into between RealSource and U.S. Data. Further, Priority Direct knew, by virtue of its prior relationship with U.S. Data, that U.S. Data had an expectation of prospective economic advantage with its customers.

36. On information and belief, Priority Direct conspired with RealSource to divert customers of U.S. Data to RealSource.

37. RealSource utilized confidential information it had access to as a result of its relationship with U.S. Data and used this information to directly solicit U.S. Data's customers, something it was prohibited from doing under both NDA's.

38. As a result of RealSource's and Priority Direct's interference with existing business relationships and direct solicitation of customers in contravention of both NDA's, U.S. Data suffered damages in that it failed to generate revenue from those lost sales, and at least one of its customers, Timeshare Relief, ceased ordering product from U.S. Data in November 2007. The amount of revenue lost to date as a result of RealSource's and Priority Direct's tortious interference is an amount in excess of $500,000.

WHEREFORE, Plaintiff, U.S. Data Corporation respectfully requests that this Court enter judgment in their favor and against Defendants, RealSource, Inc. and Priority Direct, LLC, and provide it with the following relief:

    A.    Judgment in an amount of $500,000.00, plus interest.

    B.    An Order awarding Plaintiff its attorneys' fees and costs.

    C.    Any other relief as the Court deems equitable and just.

## COUNT III
### (Conversion Against All Defendants)

39. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-38 of this Complaint as though fully set forth herein.

40. By reason of the conduct alleged above, RealSource and Priority Direct have converted Plaintiff's property to their benefit. Specifically, the Defendants have used confidential information obtained as a result of RealSource's business relationship with U.S. Data to directly solicit U.S. Data's customers.

41. Plaintiff further alleges that in converting its property, Defendants acted with malice and a willful disregard of what they knew to be their legal duty.

42. Unless RealSource and Priority Direct are prohibited from further acts of conversion, Plaintiff will continue to suffer irreparable injury, including the loss of more customer relationships.

WHEREFORE, Plaintiff, U.S. Data Corporation, respectfully requests this Court to enter:

    A.    An Order prohibiting RealSource and Priority Direct from soliciting or doing business, directly or indirectly, with U.S. Data customers or from assisting anyone else to solicit or do business with any U.S. Data customers.

    B.    An Order prohibiting RealSource and Priority Direct, and anyone acting in concert with them (including their current employees) from using in any way any client information belonging to U.S. Data, together with all derivatives thereof.

    C.    An Order awarding Plaintiff its attorneys' fees and costs.

    D.    Any other relief as the Court deems equitable and just.

## COUNT IV
### (Unjust Enrichment Against Priority Direct)

43. Plaintiff incorporates and alleges by reference Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. From June 2006 through November 2007, Priority Direct prepared direct mail marketing materials for customers of U.S. Data, including Timeshare Relief.

45. During this time period, Priority Direct was aware of the existence of the Agreement between U.S. Data and RealSource.

46. Despite its awareness of the Agreement, Mark Welch of Priority Direct obtained customer database information directly from RealSource and utilized it in direct mail campaigns for Timeshare Relief.

47. Priority Direct engaged in this conduct during the course of its business dealings with U.S. Data and its customer, Timeshare Relief.

48. Priority Direct has received and continues to receive a benefit in increased revenue from its dealings with RealSource on behalf of Timeshare Relief, even though it was not entitled to obtain this information directly from RealSource.

49. Priority Direct has been unjustly enriched by receiving this revenue.

50. The amount of Priority Direct's unjust enrichment is an amount in excess of $300,000.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor and against Defendant, Priority Direct, and provide it with the following relief:

a. Judgment in an amount in excess of $300,000, plus interest;

b. Attorney's fees and costs incurred herein; and

c. Any and all relief this Court deems just and appropriate.

Plaintiff demands trial by jury in this matter.

Dated: February 21, 2008

> Respectfully submitted,
>
> U.S. DATA CORPORATION
>
> By:   s/James R. Pittacora
>       One of its attorneys

James R. Pittacora
Elizabeth Stevens
PITTACORA & CROTTY, LLC
1928 W. Fulton, Suite 201
Chicago, IL 60612
(312) 506-2000 (phone)
(312) 506-2005 (fax)
jp@pittacoracrotty.com
es@pittacoracrotty.com