UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. DATA CORPORATION, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REALSOURCE INC. and PRIORITY | ) | |
| DIRECT, LLC, | ) | No. 08 CV 1092 |
|     Defendant. | ) | Judge Blanche M. Manning |
| | ) | |
| and | ) | |
| | ) | |
| REALSOURCE INC., | ) | |
|     Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DATA CORPORATION, | ) | |
|     Counter-Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff U.S. Data Corporation helps direct marketers target consumers who meet certain criteria. To do so, it obtains data about consumers from defendant Realsource, Inc., screens the data to identify consumers that meet the specific criteria, and then sells the newly-compiled data to its direct marketing clients. However, U.S. Data contends that Realsource is trying to cut it out of the picture by contacting U.S. Data's clients in order to sell its data to those clients directly.

U.S. Data has sued RealSource and Priority Direct, a company that prints and mails direct mail marketing materials, alleging that Realsource and Priority Direct are working together to steal U.S. Data's clients. Realsource has filed a counterclaim, alleging that U.S. Data has

misused the data it obtained from Realsource. Each party has filed a motion to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motions to dismiss filed by RealSource [10-1] and Priority Direct [11-1] are denied, and the motion to dismiss filed by U.S. Data [16-1] is granted in part and denied in part as follows: the motion to dismiss Counts I and III are denied, while the motion to dismiss Count II is granted.

U.S. Data has also filed a motion [19-1] seeking fees from both RealSource and Priority Direct for failing to waive service of process. That motion is stricken.

**BACKGROUND**

The description that U.S. Data sets forth in its amended complaint about the parties' relationships is markedly different than the relationships described in RealSource's counterclaim. However, it is not entirely clear to the court whether the allegations in the counterclaim are consistent with or contradictory to the allegations in the amended complaint. In any event, the court will set out the allegations in the amended complaint separately from the allegations in the counterclaim. For the purposes of resolving each motion to dismiss, the court will deem the allegations of the pleading that is the subject of the motion to be true. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

**I.    U.S. Data's Version of the Parties' Relationship**

U.S. Data began obtaining data from RealSource in 2005. According to U.S. Data's amended complaint, the parties operated under two agreements they had executed in 2005, a Pre-Screen List Agreement and a Non-Disclosure/Non-Circumvent Agreement. In 2007, the parties re-executed both agreements. Both the 2005 and 2007 non-disclosure agreements prohibited the parties from disseminating information provided by the other party and from circumventing the

relationships that each party had with its own clients. The non-disclosure agreements also provide that "in any action or proceeding arising out of this Agreement, the party prevailing in such action shall be entitled to recover its reasonable attorney's fees and costs." (R.1, Ex. 2 at 4; R. 1, Ex. 4 at 4.)

One of the clients that U.S. Data served was Timeshare Relief. U.S. Data contends that Timeshare Relief had been a steady customer but, in June 2007, its orders began to drop off. U.S. Data eventually discovered that Timeshare Relief had begun obtaining data directly from RealSource. It also discovered that defendant Priority Direct, who prepared mailings for many U.S. Data clients, was helping steer those clients to RealSource.

In its amended complaint, U.S. Data alleges the following claims: (a) RealSource breached the 2005 and 2007 Non-Disclosure/Non-Circumvent Agreements by soliciting U.S. Data's customers (Count I); (b) RealSource and Priority Direct tortiously interfered with U.S. Data's prospective economic advantage by soliciting its customers (Count II); (c) RealSource and Priority Direct have engaged in conversion by using confidential information obtained by RealSource to directly solicit U.S. Data's customers (Count III); and (d) Priority Direct was unjustly enriched through the "increased revenue" it received as a result of improperly soliciting U.S. Data's customers (Count IV). (R.8 at 10.)

RealSource and Priority Direct each filed a separate motion to dismiss but the motions are virtually identical except for the sections seeking to dismiss Count I (to which only RealSource is a defendant) and Count IV (to which only Priority Direct is a defendant). In the motions, the defendants set out the following arguments in favor of dismissal: (a) the breach of contract claim based upon the 2007 non-disclosure agreement should be dismissed because RealSource never

signed the agreement; (b) the tortious interference claim should be dismissed because the complaint does not allege each element of that tort and did not allege the date on which tortious conduct occurred; (c) the conversion claims should be dismissed because the complaint does not allege each element of that tort; (d) the unjust enrichment claim should be dismissed because Priority Direct has done nothing wrong; and (e) the request for attorney's fees should be stricken from the complaint because there is no contractual or statutory basis for awarding fees.

## II.     RealSource's Version of the Parties' Relationship

RealSource's counterclaim describes the parties' relationship differently. According to the counterclaim, U.S. Data and RealSource operated under discrete Letters of Acknowledgment. The parties executed a new Letter of Acknowledgment each time U.S. Data obtained data from RealSource. The Letter of Acknowledgment gave U.S. Data access to RealSource's entire database, but limited U.S. Data to a single use of the data obtained.

"At some point," U.S. Data stopped contracting to gain access to RealSource's entire database, and instead paid only to access recent additions to the database. (R.14 at 2.) "Representatives from U.S. Data" told "representatives of RealSource" that U.S. Data needed access only to recent additions to the database because that's the only data that U.S. Data's clients were requesting. (*Id.* at 3.) However, RealSource later learned that U.S. Data was continuing to use and resell RealSource's entire database in violation of the terms of the Letters of Acknowledgement.

In its counterclaim, RealSource alleges the following claims: (a) U.S. Data breached the Letters of Acknowledgment by using RealSource's data more than once (Count I); (b) U.S. Data engaged in fraud by stating that its clients wanted to purchase only recently-added data (Count

II); and (c) U.S. Data engaged in conversion through its unauthorized multiple uses of RealSource's database.

U.S. Data seeks to dismiss the counterclaim based upon the following arguments: (a) the breach of contract claim should be dismissed because the counterclaim fails to allege that the Letters of Acknowledgment were signed and fails to attach them; (b) the fraud claim should be dismissed because the counterclaim did not plead it with the particularity required under Federal Rule of Civil Procedure 9(b); and (c) the conversion claim should be dismissed because the counterclaim does not allege each element of that tort and because RealSource was never deprived of control of its data.

**ANALYSIS**

Unfortunately, none of the parties have identified the proper standard for a Rule 12(b)(6) motion to dismiss. Not only do they appear unaware of the Supreme Court's recent retooling of the pleading standard in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), but also appear to conflate the notice pleading standard applicable in federal court with the fact pleading standard applicable in state court. The court therefore finds it necessary to comprehensively review the applicable standard.

On a motion to dismiss under Rule 12(b)(6), the court accepts the allegations in the complaint or counterclaim as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby*, 205 F.3d at 326. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964-65 (2007) (citations omitted).

The Seventh Circuit has interpreted *Bell Atlantic* as follows:

> Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). *See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007) (observing that under *Bell Atlantic* a complaint must now contain "enough facts to state a claim for relief that is plausible on its face.").

With the proper standard in mind, the court turns to the parties' argument in favor of dismissal.

**I.  RealSource and Priority Direct's Motions to Dismiss the Amended Complaint**

  *A.  Breach of Contract (Count I)*

First, RealSource argues that Count I of U.S. Data's amended complaint is subject to dismissal because the claim includes an allegation that RealSource breached a 2007 contract but fails to allege that RealSource ever signed the contract. The complaint identifies the contract at issue, the relevant terms, what terms RealSource allegedly breached, and what conduct allegedly

breached the contract. The allegations therefore provide RealSource with fair notice of the nature of the claim, and plausibly suggest that U.S. Data is entitled to relief. RealSource has not identified any additional requirement that U.S. Data allege that the contract was signed by RealSource and therefore has not identified any basis for dismissing Count I.

### B. Tortious Interference with Prospective Business Advantage (Count II)

Next, RealSource and Priority Direct argue that Count II of U.S. Data's complaint is subject to dismissal because the complaint fails to allege an element critical to a claim of tortious interference with prospective business advantage. Under Illinois law (which the parties appear to agree governs the state law tort claims), the elements of a claim of tortious interference with prospective business advantage are: (1) plaintiff's reasonable expectation of entering into a valid business relationship, (2) defendant's knowledge of that expectancy, (3) defendant's intentional and unjustifiable interference that caused a breach of termination of the expectancy, and (4) damage to the plaintiff as a result of the defendant's conduct. *See F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007).

RealSource and Priority Direct contend that U.S. Data failed to allege that its expectation of entering into a valid business relationship was reasonable. However, as discussed above, the relevant standard is not whether the plaintiff has alleged each element of its claim, but rather whether the allegations place the defendants on fair notice and plausibly suggest that the plaintiff is entitled to relief. *See Concentra*, 496 F.3d at 776. U.S. Data has identified its expectation—continued business from its clients—and that the defendants interfered with that expectation by stealing its clients. Those allegations place the defendants on fair notice of the nature of U.S. Data's claim and, if true, suggest that U.S. Data would be entitled to relief. Notice pleading does not impose an additional requirement that the complaint allege each element of the plaintiff's claim. *See Matteo v. Rubin*, No. 07 CV 2536, 2007 WL 4294734, at *4 (N.D. Ill. Dec. 3, 2007) ("Under the motion to dismiss standard, a plaintiff need not prove all of the elements of

a claim, and he only needs to suggest that he is plausibly entitled to relief."). Accordingly, the defendants have identified no basis for dismissing Count II.

### C. *Conversion Claim (Count III)*

In Count III, U.S. Data alleges that RealSource and Priority Direct "have used confidential information obtained as a result of RealSource's business relationship with U.S. Data to directly solicit U.S. Data's customers." (R.8 at 9.). RealSource and Priority Direct seek dismissal of this claim because the complaint fails to allege that the defendants assumed control of the confidential information or that U.S. Data demanded its return, required elements of a claim of conversion under Illinois law. However, as discussed above, notice pleading does not require a plaintiff to allege each element of its claim, and therefore the defendants have identified no basis for dismissing the conversion claim.

### D. *Unjust Enrichment (Count IV)*

Priority Direct seeks dismissal of Count IV because an unjust enrichment claim must be premised on wrongdoing, but the only allegations of wrongdoing against it are in Counts II and III, which are subject to dismissal.

As discussed above, the defendants' attempts to dismiss Counts II and III were unavailing. As a consequence, the unjust enrichment claim *is* premised on Priority Direct's alleged wrongdoing.

Alternatively, Priority Direct contends that the damages that U.S. Data alleges in Count IV—the revenue Priority Direct received from RealSource for helping steal U.S. Data's clients—is money that U.S. Data would never have received even if Priority Direct had engaged in no wrongdoing. However, Priority Direct has cited no authority to support its argument that

U.S. Data can establish unjust enrichment only by showing that it would have received the revenue but for Priority Direct's wrongful conduct. In fact, under Illinois law that is only one of three ways of establishing unjust enrichment: (1) the benefit should have been given to the plaintiff but mistakenly went to the defendant; (2) the defendant procured the benefit from a third party through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant had. *See Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 854 (7th Cir. 2007).

Accordingly, Priority Direct has identified no basis for dismissing Count IV.

### E. *Request for Attorney's Fees*

Both RealSource and Priority Direct seek to dismiss from U.S. Data's amended complaint the requests for attorney's fees in Counts II, III and IV. In support, the defendants argue that attorney's fees cannot be recovered in the absence of statutory or contractual authorization. Although the non-disclosure agreements provide for fees, Counts II and III sound in tort, not contract. Moreover, Count IV is directed against only Priority Direct, which was not a party to the non-disclosure agreements.

In response, U.S. Data notes that the non-disclosure agreement provides fees not only for actions alleging breach of contract, but also for "*any* action or proceeding arising out of this Agreement." (R.1, Ex. 2 at 4; R. 1, Ex. 4 at 4) (emphasis added).

The court notes initially that the defendants have cited no authority to support the proposition that a party entitled to fees under the terms of a contract may recover fees only on a breach of contract claim, but not on related tort claims that arise out of the contract. The court also notes that whether Counts II, III and IV arise out of the non-disclosure agreements depends

upon the resolution of disputed facts. Accordingly, at this time the motion to dismiss U.S. Data's requests for attorney's fees is premature and is denied without prejudice.

## II.     U.S. Data's Motion to Dismiss the Counterclaim

### A.     *Breach of Contract (Count I)*

U.S. Data argues that it is entitled to dismissal of the breach of contract claim because RealSource failed to allege that U.S. Data signed the Letters of Acknowledgment and failed to attach them to the complaint. But RealSource sufficiently alleged the content of the Letters of Acknowledgment and how U.S. Data allegedly breached them. As a result, U.S. Data has fair notice of the claim and the allegations plausibly suggest that RealSource is entitled to the relief. Nothing more is required, and therefore U.S. Data has identified no basis for dismissing Count I.

### B.     *Fraud (Count II)*

Next, U.S. Data seeks to dismiss Count II of the counterclaim based upon RealSource's failure to allege fraud with particularity. *See* Fed. R. Civ. P. 9(b). The pleading standard for a claim of fraud stands in sharp contrast to the routine notice pleading standard and, at a minimum, requires allegations identifying the time, date, place and contents of the alleged false representations. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir.1991).

In its counterclaim, RealSource alleges only that "U.S. Data, by and through its agents, represented to RealSource that U.S. Data's client would only rent data that it had not previously rented." The counterclaim fails to identify the person who made the statement, to whom they were made, the dates on which the statement was allegedly made, and specifically what was said.

RealSource argues that the heightened pleading requirements of Rule 9(b) are relaxed when fraud is alleged to have occurred over a period of time, citing *Fujisawa Pharmaceutical Co., LTD v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993). But RealSource's reliance on *Fujisawa* is misplaced for two reasons. First, based upon the dearth of particularity in the counterclaim, it is not apparent that the alleged fraud occurred over a period of time. In fact, RealSource alleged only that the fraud occurred "[a]t some point during the contractual relationship." Second, even in *Fujisawa*, the plaintiff alleged "ample references to specific dates, statements, documents, and contents," *id.* at 727, details wholly missing from RealSource's allegations.

As a result, RealSource's allegation falls short of what Rule 9(b) requires and is subject to dismissal.

Although Count II is subject to dismissal because it lacks the requisite particularity, the court will also address U.S. Data's alternative argument in favor of dismissal. In the alternative argument, U.S. Data contends that RealSource's claim of fraud is really a claim of promissory fraud and that such claims are disfavored under Illinois law except for a narrow exception that does not apply here. However, U.S. Data has mischaracterized RealSource's claim. RealSource has not alleged a false statement by U.S. Data regarding its intention to engage in or refrain from engaging in conduct in the future. Rather, the counterclaim alleges a false statement about its clients' present preference for only newly-acquired data.

Accordingly, U.S. Data's alternative argument in favor of dismissal of RealSource's fraud claim is unavailing.

### C. Conversion (Count III)

U.S. Data argues that it is entitled to dismissal of RealSource's conversion case because (a) RealSource failed to allege that it demanded the return of its database, an essential element of a claim of conversion, and (b) RealSource was never deprived use of the database that it allowed U.S. Data to access and therefore cannot establish a claim of conversion.

U.S. Data's argument that the conversion claim must be dismissed because the it fails to allege demand is unavailing. As detailed above, notice pleading does not require a plaintiff to allege each element of its claim. *See Matteo v. Rubin*, 2007 WL 4294734, at *4.

The court now turns to U.S. Data's argument that RealSource was never deprived of its database and therefore cannot establish conversion. In support, U.S. Data cites *DirecTv, Inc. v. Hinton*, No. 03 CV 8477, 2004 WL 856555, *4 (N.D. Ill. Apr. 21, 2004), in which the court dismissed a claim of conversion because the defendant's alleged interception of DirecTv's satellite signal did not deprive DirecTv the use of that signal. In its response to the motion to dismiss, RealSource attempts to distinguish *DirecTv*, arguing that the satellite signal at issue in that case was intangible while the database that RealSource provided to U.S. Data was contained "on a computer compact disc." (R.23 at 6.)

Whether RealSource's database was tangible or intangible is a question of fact that is not yet ripe for resolution. For instance, while RealSource contends in its response that the database was tangible because it was on a computer compact disc, that fact is never alleged in the counterclaim (nor was such an allegation necessary under notice pleading). Accordingly, this issue is premature and not a basis for dismissing Count III.

### III. Conversion Claims in Amended Complaint and Counterclaim

Although the parties have failed to identify any basis for dismissing the other parties' conversion claims, the claims nevertheless do not appear to be viable against U.S. Data and RealSource under Illinois' economic loss doctrine. *See Am. Nat'l Bank & Trust Co. of Chicago v. AXA Client Solutionis, LLC*, 2001 WL 743399, No. 00 CV 6786, *14 (N.D. Ill. June 29, 2001) ("The economic loss doctrine prevents a plaintiff from recovering in tort purely monetary losses resulting from the defeated expectations of a commercial bargain, regardless of the plaintiff's ability to recover such losses in contract.").

Therefore, the court issues a rule to show cause why the conversion claims should not be dismissed. U.S. Data and RealSource shall each file a brief addressing what state's law applies to the conversion claim alleged in their pleadings and why the claims are not barred by the economic loss doctrine. Briefing shall proceed in accordance with the schedule set out below.

### IV. U.S. Data's Motion for Fees

U.S. Data has also filed a motion seeking fees from both RealSource and Priority Direct for failing to waive service of process. The court entered a briefing schedule and urged the parties to confer to work out the fee issue between themselves. To date, nothing more has been filed. In light of the parties' decisions not to brief the motion and in light of the court's request that the parties attempt to resolve their differences themselves, the court will assume that the issue has been resolved and, accordingly, strikes the motion for fees.

### CONCLUSION

For the reasons stated below, the motions to dismiss filed by RealSource [10-1] and Priority Direct [11-1] are denied, and the motion to dismiss filed by U.S. Data [16-1] is granted

in part and denied in part as follows: the motion to dismiss Counts I and III are denied, while the motion to dismiss Count II is granted. U.S. Data's motion for fees [19-1] is stricken.

In addition, U.S. Data and RealSource shall each file a brief addressing what state's law applies to the conversion claim alleged in their pleadings and why the claims are not barred by the economic loss doctrine. Briefing shall proceed in accordance with the schedule set out below. The opening briefs shall not exceed five pages and shall be filed no later than Friday, October 3, 2008. Responses may be filed no later than Friday, October 17, 2008, and shall not exceed five pages. Any reply may be filed no later than Friday, October 24, 2008, and shall not exceed three pages. The ruling shall be by mail.

ENTER:

DATE: September 22, 2008

Blanche M. Manning
United States District Judge